GINSBURG, Circuit Judge,
dissenting in part:
With certain exceptions, of which more later, an Indian tribe lacks inherent authority to regulate the conduct of a nonmember on land he owns within the boundaries of the tribe’s reservation. Lacking inherent authority, a tribe may exercise regulatory authority over such non-Indian lands only by express congressional delegation. The court today determines that § 301(d)(2)(B) of the Clean Air Act, 42 U.S.C. § 7601(d)(2)(B), expressly delegates to tribes — contingent upon approval by the EPA Administrator — authority to enforce the Clean Air Act on nonmembers’ lands within a reservation. Finding no such express delegation in § 301(d)(2)(B), I dissent from Part II.A of the opinion for the court.
I. Background
In State of Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Crow tribe had sought to regulate nonmembers’ hunting and fishing upon lands owned in fee by the State of Montana but lying within the boundaries of the Crow reservation. The Supreme Court, unanimous upon this point, held that a tribe generally lacks authority to regulate the conduct of nonmembers upon lands owned in fee by nonmembers (“fee lands”); of the two exceptions the Court noted, the only one arguably relevant here is that “[a] tribe may ... retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Id. at 566, 101 S.Ct. 1245. Absent such a threat or effect, tribal regulation of fee lands within a reservation requires an “express congressional delegation.” Id. at 564, 101 S.Ct. 1245.
The two provisions of the Clean Air Act relevant to the question of tribal authority to enforce the Act on fee lands were added by § 107 of the 1990 Amendments, Pub.L. No. 101-549, 104 Stat. 2399, 2464. Section 301(d) of the Act, 42 U.S.C. § 7601(d), provides in relevant part:
(1) Subject to the provisions of paragraph (2), the Administrator ... is authorized to treat Indian tribes as States under this chapter ...
(2) The Administrator shall promulgate regulations ... specifying those provisions of this chapter for which it is appropriate to treat Indian tribes as States. Such treatment shall be authorized only if—
(A) the Indian tribe has a governing body carrying out substantial governmental duties and powers;
(B) the functions to be exercised by the Indian tribe pertain to the management and protection of air resources within the exterior boundaries of the reservation or other areas within the tribe’s jurisdiction; and
(C) the Indian tribe is reasonably expected to be capable, in the judgment of the Administrator, of carrying out the functions to be exercised in a manner consistent with the terms and pur *1301 poses of this chapter and all applicable regulations.
Section 110(o) of the Act, 42 U.S.C. § 7410(o), provides in its entirety:
If an Indian tribe submits an implementation plan to the Administrator pursuant to section [301(d), above], the plan shall be reviewed in accordance with the provisions for review set forth in this section for State plans, except as otherwise provided by regulation promulgated pursuant to section [301(d)(2) ]. When such plan becomes effective in accordance with the regulations promulgated under section [301(d) ], the plan shall become applicable to all areas (except as expressly provided otherwise in the plan) located within the exterior boundaries of the reservation, notwithstanding the issuance of any patent and including rights-of-way running through the reservation.
The EPA’s Tribal Authority Rule (TAR) allows a tribe (subject to approval by the Administrator of the EPA) to enforce the Clean Air Act on all land within the boundaries of a reservation without having to demonstrate its inherent authority over all such land. Under the clear rule of Montana, however, a tribe lacks inherent sovereign authority to regulate fee lands (and rights of way, see Strate v. A-1 Contractors, 520 U.S. 438, 456, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997)) within a reservation except under the aforementioned exception announced in that case. Therefore, the TAR must be set aside as contrary to law unless the 1990 Amendments expressly delegate to tribes authority over fee lands and rights of way within a reservation. Upon that starting point for analysis the parties, the court, and I agree.
The EPA claims to find a delegation of authority in § 301(d)(2)(B) of the Clean Air Act. In evaluating this claim, the court is to accord no deference to the EPA’s interpretation of that section because Montana requires an “express congressional delegation” in order to expand tribal authority. In other words, the EPA cannot prevail merely by demonstrating that its interpretation of § 301(d)(2)(B) is reasonable; the agency’s interpretation must be correct if the TAR is to stand. Therefore, although we are reviewing an EPA rulemaking, on this issue the focal point for our inquiry is not the EPA’s interpretation but the statute itself. Upon this methodological point, too, all agree.
II. Analysis
With these agreed upon principles in mind, it seems to me clear that the 1990 Amendments do contain an express delegation of authority over fee lands and rights of way — but not in § 301(d), which governs tribal enforcement of all Clean Air Act programs specified by the Administrator. Rather, the delegation is in § 110(o), which governs only tribal implementation plans (TIPs). Because the specific delega-tory text in § 110(o) is significant to my conclusion that § 301(d) is not a delegation, I consider § 110(o) first.
A. Section 110(o) and the “Notwithstanding” Proviso
The petitioners’ convoluted argument to the contrary notwithstanding, § 110(o) is self-evidently an express congressional delegation of authority to enforce TIPs on fee lands and rights of way within a reservation: “the [TIP] shall become applicable to all areas ... located within the exterior boundaries of the reservation, notwithstanding the issuance of any patent and including rights-of-way running through the reservation.” The same “notwithstanding” proviso has been a feature in the only two cases in which the Supreme Court has found an express delegation of authority to tribes. In United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), and in Rice v. Rehner, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), the Court found an express delegation of authority over fee lands within a reservation based upon two statutory provisions: 18 U.S.C. § 1161, which autho *1302 rizes the tribes to enact ordinances regulating liquor in “Indian country”; and 18 U.S.C. § 1151, which defines “Indian country” to include “all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation.” See Rice, 463 U.S. at 715 & n. 1, 103 S.Ct. 3291 (“Congress has delegated authority ... in Indian country [as defined in] 18 U.S.C. § 1151”); see also Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation, 492 U.S. 408, 428, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989) (citing 18 U.S.C. §§ 1151 and 1161 together as an express congressional delegation of authority over fee lands).*
B. Section 301(d)
The express congressional delegation just identified in § 110(o) cannot by itself support the TAR, however: Because the TAR allows a tribe to enforce all applicable Clean Air Act programs — rather than just the TIP — on nonmember lands within its reservation, the EPA must demonstrate that § 301(d) likewise contains an express congressional delegation of authority.
The EPA argues the following text distilled from § 301(d) contains an express delegation to tribes of authority to regulate fee lands within a reservation:
[T]he Administrator ... is authorized to treat Indian tribes as States.... Such treatment shall be authorized only if ... the functions to be exercised by the Indian tribe pertain to the management and protection of air resources within the exterior boundaries of the reservation or other areas within the tribe’s jurisdiction.
42 U.S.C. § 7601(d)(l)-(d)(2)(B) (emphasis added). The gist of the agency’s argument, which the court accepts, is that the Congress expressly delegated authority over all lands within a reservation by linking “within the exterior boundaries of the reservation” disjunctively to “other areas within the tribe’s jurisdiction.” For the following reasons, I do not agree.
As the petitioners emphasize, when one reads the relevant sentence as a whole— rather than focusing solely upon the last phrase — one sees that, rather than expressing a delegation of authority over fee lands and rights-of-way within a reservation, the sentence by its terms merely lays down a precondition to the Administrator’s treating a tribe as a state. Even more certainly, there is no way to read the phrase deemed crucial by the court (“within the exterior boundaries of the reservation or other areas within the tribe’s jurisdiction”) as an express delegation of authority.
One important indication that the Congress did not intend this phrase as an express delegation is that it used the Court tested “notwithstanding” proviso in § 110(o) but not in § 301(d)(2)(B). Sections 110(o) and 301(d)(2)(B) were enacted at the same time, in the same section of the same bill, so the different phrasing should not be thought just an artifact of legislative haphazardry. I do not believe that the Congress, obviously aware that it could enlarge tribal authority over nonmember lands only through an express delegation, would include the formulaic *1303 “notwithstanding” proviso — the gold standard for such delegations — in the narrower of the two sections, and then use an obscure and never-before-attempted formulation to accomplish the same result in the broader of the two sections. Further, the court’s interpretation of § 301(d)(2)(B) renders the “notwithstanding” proviso in § 110(o) surplusage — a point the court euphemistically acknowledges, Maj. Op. at 1295 (“a reinforcement of tribes’ ... [§ 301(d)(2)(B) authority] to implement TIPs in reservation land”). If § 301(d)(2)(B) is so clear as to constitute an express congressional delegation, it is difficult to believe that the Congress would “reinforce” this point in a narrower provision enacted at the same time as and expressly crossreferencing § 301(d).*
Finding an express congressional delegation in § 301(d) is made even more difficult, as the petitioners contend, by the Congress’s having deleted a literal delegation to tribes that was included in the corresponding section of the bills by which the 1990 Amendments were first introduced in the House and the Senate: “the Administrator ... may delegate to [ ] tribes primary responsibility for assuring air quality and enforcement of air pollution control.” H.R. 2323, 101st Cong. § 604, reprinted, in 2 Legislative History of the Clean Air Act Amendments of 1990, at 4053, 4101 (1993) [hereinafter 1990 Leg. Hist.]; S. 1630,101st Cong. § 111, reprinted in 5 1990 Leg. Hist. 9050, 9145. The Senate passed S. 1630 with this express delegation intact; the House, however, did not act upon H.R. 2323 but instead passed H.R. 3030, in which the delegation provision did not appear. See 2 1990 Leg. Hist. 1809, 1972-73 (House passage of S. 1630, amended in the nature of a substitution of H.R. 3030). The House version prevailed in conference, see id. at 478-79, so the 1990 Amendments as finally enacted into law do not contain this literal delegation provision. The court is of course correct that the Congress need not use the word “delegate” in order to effect an express delegation, Maj. Op. at 1290; § 110(o) illustrates the point. That the Congress “specifically rejected language favorable to [EPA’s] position,” Maj. Op. at 1289, however, is further evidence that the legislature did not mean to enact a delegation of authority. Indeed, to believe that the Congress meant § 301(d)(2)(B) to serve as a delegation, after it had included the “notwithstanding” proviso in the narrower § 110(o) and removed from § 301(d) a provision that expressly provided a delegation to tribes, would require one to believe the Congress was more interested in testing our interpretive acumen than in clearly expressing its will upon the important issue of tribal authority over nonmembers.
The court claims support for its contrary conclusion in the Congress having “moved from authorizing tribal regulation over the areas ‘within the tribal government’s jurisdiction’ ... to a bifurcated classification of all areas within ‘the exterior boundaries of the reservation’ and ‘other areas within the tribe’s jurisdiction.’ ” Maj. Op. at 1288-89. Putting aside the question-begging interpolation of “all” into the quoted passage, I *1304 think the court misapprehends the significance of the phrase “within the exterior boundaries of the reservation or other areas within the tribe’s jurisdiction.” As originally introduced, H.R. 3030 referred only to air resources “within the exterior boundaries of the reservation.” 2 1990 Leg. Hist. 3737, 3853. The House Committee on Energy and Commerce without comment added the phrase “or other areas within the tribe’s jurisdiction,” id. at 3021, 3069, and as mentioned, the House version later prevailed in conference. The legislative record is silent about why the Committee added that phrase. The most straightforward interpretation of the addition is that the Committee wanted to ensure that the treatment of tribes as states extended beyond the reservation to non-contiguous areas of tribal authority, such as dependent Indian communities. This seems far more likely than that a House committee, with no discussion, inserted the phrase “or other areas within the tribe’s jurisdiction” in order to turn a simple reference to reservations into a delegation of authority over non-Indian lands within reservations.
Finally, I cannot agree with the court that we should find an express congressional delegation of authority in § 301(d)(2)(B) in any part because the contrary reading “would result in a ‘checkerboard’ pattern of regulation within a reservation’s boundaries that would be inconsistent with the purpose and provisions of the [Clean Air] Act.” Maj. Op. at 1288-89. First,, it is not at all clear that a “checkerboard” pattern — really a matter of certain fee lands remaining subject -to State (or federal) rather' than tribal authority, while surrounding areas go tribal — would result: a tribe remains free to demonstrate its inherent authority over any activity on fee lands that “threatens or has some direct effect on ... the health or welfare of the tribe,” Montana, 450 U.S. at 566, 101 S.Ct. 1245. Therefore, if a tribe does find itself without authority over certain fee lands for want of an express delegation, that is only .because no activities on those fee lands threaten or directly affect the health or welfare of the tribe.
Second, tribal authority over less than all lands within the boundaries of a reservation is the logical result of the tribes’ “diminished status as sovereigns,” Montana, 450 U.S. at 565, 101 S.Ct. 1245. The Montana rule on its face contemplates less than uniform ■ authority within a reservation; unless an exception applies, the tribe cannot regulate a parcel owned by a nonmember even though it retains authority over the surrounding lands owned by the tribe. See, e.g., Brendale, 492 U.S. at 428, 109 S.Ct. 2994 (White, J., for the Court in part and dissenting in part), 443, 445 (Stevens, J., for the Court in part and concurring in the judgment in part) (each affirming non-uniform zoning authority). 'While the Congress could have chosen to sweep away such non-uniformity in § 301(d), as it did in § 110(o), the court’s evident sense that the Congress should have done so is no basis for reading an express delegation into the statute where the Congress has not written one.*
*1305 III. Conclusion
In my view, § 301(d)(2)(B) is not an express delegation of authority for Indian tribes to regulate the conduct of nonmembers on fee lands within the boundaries of a reservation. A tribe may be able, of course, to demonstrate its authority over such fee lands under the exception recognized in Montana. Without making such a showing, however, I do not believe the tribe may regulate the conduct of nonmembers on fee lands and rights-of-way except as provided by § 110(o). I therefore respectfully dissent from Part II.A. of the opinion for the court.

 In a dictum, the Brendale Court noted as a second example of an express congressional delegation of authority §§ 518(e), (h)(1) of the Clean Water Act, 33 U.S.C. §§ 1377(e), (h)(1), the latter of which, significantly, contains the notwithstanding clause so glaringly absent from § 301(d). 492 U.S. at 428, 109 S.Ct. 2994. In terms that otherwise track § 301(d) of the Clean Air Act, § 518(e) provides for conditionally treating a tribe as a state with regard to water resources “within the borders of an Indian reservation,” defined in § 518(h)(1) as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation.” In spite of the Brendale dictum, the EPA has concluded § 518 is not an express congressional delegation of authority, see 56 Fed.Reg. 64,876, 64,880 (1991), but no court has yet resolved the issue.

The court suggests the Congress may well have intentionally avoided using the "notwithstanding” proviso in § 301(d) in response to the EPA's having interpreted § 518 of the Clean Water Act as not being a delegation. Maj. Op. at 1289. The EPA’s interpretation of the CWA was not adopted, however, until December 1991, more than a year after enactment of the 1990 Amendments. See 56 Fed. Reg. 64,876, 64,880. I am not willing blithely to "assume that Congress was aware of,” much less responded to, the EPA’s mere proposal to adopt that interpretation. When the 1990 Amendments were enacted, the EPA’s unexplained proposal was still subject to change in the light of public comments, and even if finally adopted would not receive deference from a reviewing court charged with determining whether the Congress had made an express delegation to tribes. In contrast, we know for a certainty that the Congress was aware of Brenclale, in which the Supreme Court instanced CWA § 518(h)(1) as an express congressional delegation: That case had been decided in June 1989, and is cited in the Senate Report on an earlier version of the 1990 Amendments, see S.Rep. No.101-228, at 79.

 Seymour v. Superintendent of Washington State Penitentiary, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962) and Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), cited by the court today, certainly do not counsel reading an express delegation into a statute in order to avoid non-uniform tribal authority within a reservation. In Seymour, the Court held that “an impractical pattern of checkerboard jurisdiction was avoided by the plain language of [18 U.S.C.] § 1151,” namely, the “notwithstanding” proviso. 368 U.S. at 358, 82 S.Ct. 424. And in Moe, the Court determined that because the Congress had "repudiated” but never formally repealed § 6 of the General Allotment Act, 25 U.S.C. § 349, the court would read § 6 narrowly in order to avoid creating an inconsistency with later-enacted statutes. 425 U.S. at 477-79, 96 S.Ct. 1634. Thus, the Court was merely "follow[ing] Congress’ lead in this area.” Id. at 479, 96 S.Ct. 1634. So, too, where the Congress has expressly delegated authority, as in § 110(o), we should-certainly give its command full rein; but where it has not, we should not undertake to do so for it.